Sandra C. Goldstein (admitted pro hac vice)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 8th Avenue
New York, NY 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

Jeffrey S. Gordon (Bar No. 76574)
KAYE SCHOLER LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone:  (310) 788-1000
Facsimile:  (310) 788-1200

Attorneys for Defendants
RAYMOND BREU, SRIKANT DATAR, WILLIAM GEORGE,
DANIEL VASELLA AND ROLF ZINKERNAGEL

Jordan Eth (Bar No. 121617)
MORRISON & FOERSTER
425 Market Street
San Francisco, CA 94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

Attorneys for Nominal Defendant
NOVARTIS AG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

|  |  |
|---|---|
| GREG SARANDI, Trustee of Next Phase Marketing Inc., Defined Benefit Plan and Trust, derivatively and on behalf of Novartis AG (Novartis, Inc.),<br><br>Plaintiff,<br><br>v.<br><br>RAYMOND BREU, ET AL.<br><br>Defendants. | CASE NO. C-08-02118 SBA<br><br>**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS SHAREHOLDER DERIVATIVE COMPLAINT**<br><br>DATE: April 28, 2009<br>TIME:  1:00 PM<br>PLACE: Courtroom 3, 3rd Floor<br>JUDGE: Honorable Saundra B. Armstrong |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ........................................................................................................1

ARGUMENT ..............................................................................................................2

I.    Swiss Substantive Law Applies to this Action .................................................2

      A.    The Choice-of-Law Clause in the Deposit Agreement Does Not Govern this
            Action .............................................................................................................2

      B.    The Internal Affairs Doctrine Governs and Swiss Law Applies ................6

      C.    Plaintiff Lacks Standing Under Swiss Law .................................................6

II.   Defendants Have Carried Their Burden of Demonstrating that this Action Should Be
      Dismissed on Forum Non Conveniens Grounds ...............................................6

      A.    Because Plaintiff's Choice of Forum Is Entitled to Little Deference, the
            Required Showing for Dismissal on Forum Non Conveniens Grounds Is
            Reduced in this Case ...................................................................................6

      B.    Irrespective of the Weight Accorded to Plaintiff's Choice of Forum, this Action
            Should Be Dismissed Because the Balance of the Relevant Private and Public
            Interests Weighs Strongly in Favor of Dismissal .........................................7

            1.    The Relevant Private Interest Factors All Favor Switzerland .......8

            2.    The Public Interest Factors Weigh Heavily in Favor of Dismissal ................9

III.  The Complaint Does Not Adequately Plead Demand Futility .............................11

      A.    Plaintiff Has Not Sufficiently Pled a Failure To Exercise Business Judgment ........11

      B.    Plaintiff Has Not Sufficiently Pled that the Board Failed To Stay Informed ..........12

      C.    Plaintiff Has Not Sufficiently Pled that a Majority of the Board Is Interested ........13

IV.   Plaintiff Has Failed To Allege Continuous Ownership of Novartis ADSs ...........14

CONCLUSION ..........................................................................................................15

DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS
CASE NO. C-08-02118 (SBA)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Adams v. Banc of Am. Secs. LLC,
No. 602297/04, 2005 WL 1148693 (N.Y. Sup. Ct. Mar. 31, 2005) ...................3

Alpert v. Nat'l Ass'n. of Sec. Dealers, LLC,
No. 600657/04, 2004 WL 3270188 (N.Y. Sup. Ct. July 28, 2004) ...................14

Batchelder v. Kawamoto,
147 F.3d 915 (9th Cir. 1998) ...................1, 4, 5, 6

BBS Norwalk One, Inc. v. Raccolta, Inc.,
60 F. Supp. 2d 123 (S.D.N.Y. 1999) ...................3

Capri Trading Corp. v. Bank Bumiputra Malaysia Berhad,
812 F. Supp. 1041 (N.D. Cal. 1993) ...................10

Carey v. Bayerische Hypo-Und Vereinsbank AG,
370 F.3d 234 (2d Cir. 2004) ...................7

Chateau Des Charmes Wines Ltd. v. Sabate USA, Inc.,
No. C-01-4203, 2003 WL 22682483 (N.D. Cal. Nov. 10, 2003) ...................8, 10

City of Harper Woods Employees' Ret. Sys. v. Olver,
577 F. Supp. 2d 124 (D.D.C. 2008) ...................5

City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC,
423 F. Supp. 2d 348 (S.D.N.Y. 2006) ...................5

Dole Food Co., Inc. v. Watts,
303 F.3d 1104 (9th Cir. 2002) ...................7

E.ON AG v. Acciona, S.A.,
468 F. Supp. 2d 559 (S.D.N.Y. 2007) ...................10

E*Trade Fin. Corp. v. Deutsche Bank AG,
420 F. Supp. 2d 273 (S.D.N.Y. 2006) ...................3

Fausto v. Credigy Servs. Corp.,
251 F.R.D. 427 (N.D. Cal. 2008) ...................9

Ferre v. McGrath,
No. 06 Civ. 1684, 2007 WL 1180650 (S.D.N.Y. Feb. 16, 2007) ...................13

Finance One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.,
414 F.3d 325 (2d Cir. 2005) ...................3

Gemini Capital Group, Inc. v. Yap Fishing Corp.,
150 F.3d 1088 (9th Cir. 1998) ...................7

Hausman v. Buckley,
299 F.2d 696 (2d Cir. 1962) ...................6

In re Affymetrix Derivative Litig.,
    No. C-06-5353, 2008 WL 5050147 (N.D. Cal. Mar. 31, 2008) ...................................................15

In re Autodesk, Inc. S'holder Derivative Litig.,
    No. C-06-7185, 2008 WL 5234264 (N.D. Cal. Dec. 15, 2008) ................................................15

In re Bank of New York Derivative Litig.,
    173 F. Supp. 2d 193 (S.D.N.Y. 2001) ...............................................................................15

In re BP p.l.c. Derivative Litig.,
    507 F. Supp. 2d 302 (S.D.N.Y. 2007).................................................................................6

In re Maxim Integrated Prods., Inc. Derivative Litig.,
    No. C-06-0334, 2007 WL 2745805 (N.D. Cal. July 25, 2007) ............................................14

In re TS Tech USA Corp.,
    551 F.3d 1315 (Fed. Cir. 2008) .......................................................................................9

Koster v. (Am.) Lumbermens Mut. Cas. Co.,
    330 U.S. 518 (1947).......................................................................................................7

Krock v. Lipsay,
    97 F.3d 640 (2d Cir. 1996) ..........................................................................................3, 4

LaSala v. UBS, AG,
    510 F. Supp. 2d 213 (S.D.N.Y. 2007) ...............................................................................8

Leetsch v. Freedman,
    260 F.3d 1100 (9th Cir. 2001) .......................................................................................11

Lewis v. Graves,
    701 F.2d 245 (2d Cir. 1983) ..........................................................................................11

Lockman Found. v. Evangelical Alliance Mission,
    930 F.2d 764 (9th Cir. 1991) ...........................................................................................7

Longview Equity Fund, L.P. v. iWorld Projects & Sys., Inc.,
    No. 05 Civ. 6745, 2008 WL 833230 (S.D.N.Y. Mar. 26, 2008) .............................................3

Lueck v. Sundstrand Corp.,
    236 F.3d 1137 (9th Cir. 2001) ......................................................................................7, 8

M+J Savitt, Inc. v. Savitt,
    No. 08 Civ. 8535, 2009 WL 691278 (S.D.N.Y. Mar. 17, 2009) .....................................12, 13

Marx v. Akers,
    88 N.Y.2d 189 (N.Y. 1996) .................................................................................11, 12, 13

Matter of Comverse Tech., Inc.,
    56 A.D.3d 49 (App. Div. 1st Dep't 2008) ..................................................................12, 14

Miller v. Schreyer,
    257 A.D.2d 358 (App. Div. 1st Dep't 1999) .....................................................................13

DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS
CASE NO. C-08-02118 (SBA)

Narayan v. EGL, Inc.,
    No. C-05-04181, 2007 WL 2021809 (N.D. Cal. July 10, 2007) ....................................................3

Pinker v. Roche Holdings, Ltd.,
    292 F.3d 361 (3d Cir. 2002) ..................................................................................................10

Seybold v. Groenink,
    No. 06 Civ. 772, 2007 WL 737502 (S.D.N.Y. Mar. 12, 2007) ................................................5, 6

Tjontveit v. Den Norske Bank ASA,
    997 F. Supp. 799 (S.D. Tex. 1998) ..........................................................................................7

Tomran, Inc. v. Passano,
    891 A.2d 336 (Md. 2006) ....................................................................................................4, 5

Wandel v. Eisenberg,
    871 N.Y.S.2d 102 (App. Div. 1st Dep't 2009) ......................................................................12, 13

Washington Mut. Bank, FA v. Superior Court,
    15 P.3d 1071 (Cal. 2001) ......................................................................................................3

Wilson v. Tully,
    243 A.D.2d 229 (App. Div. 1st Dep't 1998) ............................................................................12

**Statutes & Rules**

Federal Rule of Civil Procedure 23.1 ......................................................................................2, 13, 14

**Other Authorities**

Restatement (Second) of Conflict of Laws § 302, cmt. (e) ................................................................6

# INTRODUCTION

Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss ("Opposition" or "Opp'n") mischaracterizes the nature of this action. This case involves an alleged dispute between Novartis AG ("Novartis"), a company headquartered and incorporated in Switzerland, and thirteen of its current and former officers and directors (the "Individual Defendants"), all but two of whom live in Europe. The ultimate question is whether those officers and directors breached the duties that they owed <u>to Novartis</u>. Despite this, Plaintiff insists that the substantive law of New York should apply and that this Court--rather than a Swiss court--is the more convenient and appropriate forum in which to litigate this dispute. Plaintiff's arguments find no support in either law or logic.

<u>First</u>, Plaintiff's assertion that the New York choice-of-law provision in the Deposit Agreement is broad enough to encompass this derivative action is contrary to well-established case law. In fact, Plaintiff has not cited a single case that would support his interpretation of the provision. While Plaintiff attempts to distinguish <u>Batchelder</u>, the Ninth Circuit's interpretation of the choice-of-law clause in that case supports Defendants' position that the New York choice-of-law provision does not apply here. The issue of derivative standing in this case is determined by the internal affairs doctrine, which mandates the application of Swiss law. Plaintiff not only ignores the internal affairs doctrine, but does not even attempt to challenge the expert opinion of Professor Peter Nobel that, under Swiss law, Plaintiff lacks standing to bring a derivative suit on Novartis' behalf. (<u>See</u> <u>infra</u> § I.)

<u>Second</u>, Plaintiff's attempt to demonstrate the convenience of this forum by focusing on witnesses and evidence related to the alleged underlying conduct is misplaced. Rather, when viewed in the context of the claims actually at issue, <u>i.e.</u>, breach of fiduciary duty against the thirteen Individual Defendants, Switzerland is a far more convenient and appropriate forum. Indeed, Plaintiff does not dispute that Switzerland provides an adequate forum for adjudication of this dispute. When coupled with the fact that Plaintiff's choice of forum in this derivative case is entitled to little deference, it is clear that this action should be dismissed on forum non conveniens grounds. (<u>See</u> <u>infra</u> § II.)

**Third**, even if New York substantive law were to govern this action--and it does not --Plaintiff's Opposition does nothing more than reiterate the Complaint's conclusory and boilerplate allegations of demand futility. Under New York law, those allegations fall well short of the particularity required to establish that demand is excused. (See infra § III.)

**Fourth**, Plaintiff has cited no authority to contradict the well-established rule that he must allege the specific date on which he purchased Novartis ADSs to satisfy the continuous ownership requirement of Federal Rule of Civil Procedure 23.1. (See infra § IV.)[1]

**ARGUMENT**

I.   **Swiss Substantive Law Applies to this Action.**

Plaintiff does not challenge that, if Swiss law applies, he lacks standing to bring this derivative suit. Plaintiff's only argument is that New York substantive law should govern all of the claims of this action based on the choice-of-law clause contained in Novartis' Deposit Agreement. (Opp'n at 9-15.) Plaintiff is wrong. As both the plain language of the Agreement and controlling case law make clear, the narrow choice-of-law provision in Novartis' Deposit Agreement--a contract to which Novartis' directors are not parties--applies only to contractual claims brought directly under the Agreement. It has no bearing on a derivative action for breach of fiduciary duty. Rather, consistent with the internal affairs doctrine, Plaintiff's claims--including the right to maintain a derivative action on behalf of Novartis--are determined by the law of Switzerland, the place of Novartis' incorporation.

A.   The Choice-of-Law Clause in the Deposit Agreement Does Not Govern this Action.

The choice-of-law clause in Novartis' Deposit Agreement provides that the

---

[1] Plaintiff's contention that Defendants have refused to participate in discovery (Opp'n at 8-9), is incorrect and irrelevant to this motion. Plaintiff agreed in the joint Case Management Conference Statement and [Proposed] Order to limit initial discovery requests to issues raised in the Motion to Dismiss. (Docket No. 40.) As such, Defendants' responses to Plaintiff's discovery requests provided Plaintiff with documents and information that are relevant to Defendants' Motion to Dismiss. Plaintiff has not even attempted to demonstrate how any of the additional documents or information sought by his discovery requests is relevant to Defendants' Motion to Dismiss. Further, contrary to Plaintiff's claims, the parties' agreement to extend the briefing schedule had nothing to do with discovery-related issues. In fact, that is precisely why Defendants required Plaintiff to stipulate that he would not "seek any additional extension or modification to the briefing schedule … for any reason whatsoever, including discovery". (Docket No. 58 (emphasis added).)

Agreement "shall be governed by and construed in accordance with the laws of the State of New York". (See Exhibit A, ¶ 18 and p. A-1, to the Declaration of Timothy F. Van Voris, dated March 3, 2009 (Docket No. 51).) As Defendants discuss in their opening brief, because the right to bring a derivative action is not provided for in the Deposit Agreement, the choice-of-law provision is irrelevant to this action. (Defendants' Motion to Dismiss ("Defendants' Motion" or "Defs.' Mot.") at 8-9.) Acknowledging that the Deposit Agreement does not contain the right to sue derivatively, Plaintiff's only argument is that the choice-of-law clause broadly "governs the parties' relationship" and "all possible disputes" relating to Plaintiff's rights as an ADS-holder. (Opp'n at 11, 13.)

Plaintiff's argument is directly contrary to well-established New York law.[2] Numerous courts applying New York law have held that the language "governed by and construed in accordance with" applies narrowly to <u>contractual</u> causes of action only and is not "sufficiently broad as to encompass the entire relationship between the contracting parties". <u>Krock v. Lipsay</u>, 97 F.3d 640, 645 (2d Cir. 1996) (concluding there was "no way [this] language can be read broadly enough" to govern plaintiff's common law tort claim of fraudulent misrepresentation) (internal quotation marks and citation omitted); <u>see also</u> <u>BBS Norwalk One, Inc. v. Raccolta, Inc.</u>, 60 F. Supp. 2d 123, 129 (S.D.N.Y. 1999) (finding that identical choice-of-law provision in a shareholders' agreement was "narrow and [did] not purport to govern a tort claim", and instead applying law of state of incorporation to claim for breach of fiduciary duty).[3] Indeed, in addressing the precise issue of whether a choice-of-law provision in a shareholders' agreement governs plaintiff's standing to sue derivatively, the New York Supreme Court has held that the law of the state of incorporation--and not the choice-of-law provision--controls. <u>Adams v. Banc of Am. Secs.</u>

---

[2] Under California choice-of-law rules, "the scope of a choice-of-law clause in a contract is a matter that ordinarily should be determined under the law designated therein" (here, New York). <u>Washington Mut. Bank, FA v. Superior Court</u>, 15 P.3d 1071, 1078 n.3 (Cal. 2001); <u>see also</u> <u>Narayan v. EGL, Inc.</u>, No. C-05-04181, 2007 WL 2021809, at *4 (N.D. Cal. July 10, 2007).

[3] <u>See also</u> <u>Finance One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.</u>, 414 F.3d 325 (2d Cir. 2005); <u>Longview Equity Fund, L.P. v. iWorld Projects & Sys., Inc.</u>, No. 05 Civ. 6745, 2008 WL 833230 (S.D.N.Y. Mar. 26, 2008); <u>E*Trade Fin. Corp. v. Deutsche Bank AG</u>, 420 F. Supp. 2d 273 (S.D.N.Y. 2006).

DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS
CASE NO. C-08-02118 (SBA)

LLC, No. 602297/04, 2005 WL 1148693, at *5 (N.Y. Sup. Ct. Mar. 31, 2005).

Thus, because the Deposit Agreement does not provide Plaintiff with the right to sue derivatively (Opp'n at 13), this action falls outside the scope of the New York choice-of-law provision. In fact, Plaintiff does not cite a single case to support his interpretation of this choice-of-law provision, but instead is left only with unsuccessful attempts to distinguish the authority cited in Defendants' Motion.

Plaintiff first argues that Batchelder v. Kawamoto, 147 F.3d 915 (9th Cir. 1998), is "readily distinguishable" because the choice-of-law clause in that case consisted of two sentences: the first sentence provided that the deposit agreement would be "governed by and construed in accordance with" New York law, while the second sentence stated that "the rights of [ADR-holders] and the duties and obligations of the Company in respect of such holders" would be governed by Japanese law. (Opp'n at 12 (quoting Batchelder, 147 F.3d at 918).) The Ninth Circuit interpreted the first sentence to apply to "contract rights contained in the Deposit Agreement itself" and the second sentence to apply to any rights "not specifically granted" in the agreement. Batchelder, 147 F.3d at 918.

The choice-of-law provision in Novartis' Deposit Agreement identifies the law that should govern the Agreement itself (i.e., Batchelder's first sentence), but does not specify the law that should apply to rights not set forth in the Agreement (i.e., Batchelder's second sentence). Plaintiff contends that the absence of the second sentence necessarily expands the scope of the first sentence to encompass all rights (both contractual and non-contractual). (Opp'n at 13.) This is simply not the case. The plain language of the choice-of-law clause, as well as clear New York authority limiting identical language to contractual causes of action, precludes Plaintiff's interpretation. See, e.g., Krock, 97 F.3d at 645. Moreover, this exact argument was rejected in Tomran, Inc. v. Passano, 891 A.2d 336 (Md. 2006), where the Court of Appeals of Maryland concluded that the "Ninth Circuit [in Batchelder] did not make its interpretation of the scope of the first sentence contingent upon the existence of the second sentence". Id. at 345.

Significantly, the Batchelder court went on to make clear that, "[i]n any event, even if we were to ignore the Deposit Agreement's choice-of-law provision", the internal affairs doctrine

4

would direct the court to apply the law of Japan, the place of incorporation of nominal defendant Honda, "to determine the existence and scope of [plaintiff's] derivative claims". 147 F.3d at 920. Similarly here, in the absence of a choice-of-law provision specifying the law that should apply to rights not set forth in the Deposit Agreement, the internal affairs doctrine governs and mandates the application of Swiss law.

Plaintiff's attempts to distinguish Tomran and City of Sterling Heights are also unavailing. The choice-of-law provisions in those cases provided that the "Deposit Agreement and the Receipts shall be interpreted and all rights hereunder and thereunder . . . shall be governed by the laws of the State of New York". Tomran, 891 A.2d at 342 (emphasis added); City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC, 423 F. Supp. 2d 348, 364 n.7 (S.D.N.Y. 2006) (emphasis added). Plaintiff claims that the inclusion of the language "hereunder and thereunder" limited the choice-of-law clauses in those cases to rights identified in the deposit agreements, and that the absence of this language in Novartis' Deposit Agreement means that the choice-of-law clause here is broader in scope. (Opp'n at 14-15.) This argument misses the point.

In both Tomran and City of Sterling Heights, plaintiffs asserted that the "all rights" language expanded the choice-of-law clauses beyond those rights enumerated in the contracts. Tomran, 891 A.2d at 345; City of Sterling, 423 F. Supp. 2d at 363. The courts rejected this argument, concluding that "hereunder and thereunder" served to limit the otherwise inclusive phrase, "all rights", to those rights specifically set forth in the deposit agreements. Here, the choice-of-law clause provides only that the Deposit Agreement itself--and not "all rights"--will be governed by New York law. Therefore, if anything, the choice-of-law clause in the Novartis Deposit Agreement is narrower than those in Tomran and City of Sterling.[4]

---

[4] Plaintiff's attempts to distinguish City of Harper Woods Employees' Ret. Sys. v. Olver, 577 F. Supp. 2d 124 (D.D.C. 2008), and Seybold v. Groenink, No. 06 Civ. 772, 2007 WL 737502 (S.D.N.Y. Mar. 12, 2007), are also meritless. In Seybold, the parties did not, as Plaintiff claims, stipulate that Dutch law applied. (Opp'n at 15.) Rather, plaintiff urged the court to recognize a public policy exception to the internal affairs doctrine and apply New York law. 2007 WL 737502, at *6-8. Additionally, the court in City of Harper Woods explicitly stated that it "need not resolve" the issue of whether ADS-holders have standing to bring derivative actions under English law because plaintiff lacked standing pursuant to other principles of applicable English law. 577 F. Supp. 2d at 131.

DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS
CASE NO. C-08-02118 (SBA)

B.    The Internal Affairs Doctrine Governs and Swiss Law Applies.

Because the choice-of-law provision in the Deposit Agreement has no bearing on Plaintiff's claims, the internal affairs doctrine governs. Plaintiff does not contest that, if analyzed under this well-established choice-of-law principle, Plaintiff's claims--including the right to bring this derivative action--should be determined by the law of Switzerland, the place of Novartis' incorporation. (Defs.' Mot. at 6-9.) Courts routinely apply the internal affairs doctrine to decide the issue of derivative standing, and this Court should do the same.[5] See, e.g., Batchelder, 147 F.3d at 920; Hausman v. Buckley, 299 F.2d 696, 700-702 (2d Cir. 1962); In re BP p.l.c. Derivative Litig., 507 F. Supp. 2d 302, 307-11 (S.D.N.Y. 2007); Seybold v. Groenink, No. 06 Civ. 772, 2007 WL 737502, at *5-6 (S.D.N.Y. Mar. 12, 2007).

C.    Plaintiff Lacks Standing Under Swiss Law.

Plaintiff does not even address, much less attempt to contradict, the expert legal opinion of Professor Peter Nobel that, under Swiss law, an ADS-holder does not have standing to bring a derivative action on behalf of Novartis. (See Defs.' Mot. at 9-11; Declaration of Peter Nobel ¶¶ 18-30, dated March 3, 2009 (Docket No. 50) ("Nobel Decl. ¶ __").) The Court should credit Professor Nobel's uncontradicted opinion and dismiss this action on standing grounds alone.

II.   **Defendants Have Carried Their Burden of Demonstrating that this Action Should Be Dismissed on Forum Non Conveniens Grounds.**

A.    Because Plaintiff's Choice of Forum Is Entitled to Little Deference, the Required Showing for Dismissal on Forum Non Conveniens Grounds Is Reduced in this Case.

Plaintiff's contention that Defendants must meet a "heavy" burden to overcome the deference due to his choice of forum is incorrect. (Opp'n at 19, 22.) All of the cases cited by Plaintiff in support of the proposition that the balance of interests must "strongly" favor dismissal

---

[5] Plaintiff's argument that New York substantive law governs this action would result in a scenario where the fiduciary duties owed by the officers and directors to Novartis would vary depending on who initiates a derivative action. Thus, if an ADS-holder brings a derivative suit on Novartis' behalf, the duties of the officers and directors to Novartis would be defined by New York Business Corporations Law, whereas if a registered shareholder sues, Swiss law would provide the relevant standard of conduct. Not only is this position illogical, but it is exactly what the internal affairs doctrine is designed to avoid. See Restatement (Second) of Conflict of Laws § 302, cmt. (e) ("Uniform treatment of directors, officers and shareholders . . . can only be attained by having the rights and liabilities of those persons with respect to the corporation governed by a single law.").

involve American plaintiffs suing on their own behalf in the state where they reside.  See, e.g., Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1108, 1118-19 (9th Cir. 2002).  By contrast, because the real party in this derivative action is Novartis, a Swiss corporation, Plaintiff's choice of forum is entitled to significantly less deference.[6]  Indeed,

> [f]ederal courts have long treated motion[s] for forum non conveniens dismissals differently depending on whether a United States plaintiff is suing in his own right or is a nominal plaintiff, suing as an assignee, subrogee, or representative of a foreign company.  In the latter case, courts have generally refused to give special deference to the domestic forum choice of a nominally American plaintiff.

Tjontveit v. Den Norske Bank ASA, 997 F. Supp. 799, 804-05 (S.D. Tex. 1998) (internal quotation marks and citation omitted); see also Koster v. (Am.) Lumbermens Mut. Cas. Co., 330 U.S. 518, 524-25 (1947).  Moreover, Plaintiff has not even brought this action in his own state of residence.  See Gemini Capital Group, Inc. v. Yap Fishing Corp., 150 F.3d 1088, 1091 (9th Cir. 1998).  Because Plaintiff's choice of forum is entitled to little deference, the showing required by Defendants in this case is significantly reduced.  See Lueck v. Sundstrand Corp., 236 F.3d 1137, 1145 (9th Cir. 2001) (noting that "a foreign plaintiff's choice of forum merits less deference than that of a plaintiff who resides in the selected forum, and the showing required for dismissal is reduced").

        B.      <u>Irrespective of the Weight Accorded to Plaintiff's Choice of Forum, this Action Should Be Dismissed Because the Balance of the Relevant Private and Public Interests Weighs Strongly in Favor of Dismissal.</u>

Plaintiff does not challenge that Switzerland is an adequate forum for adjudication of this derivative action.  (Opp'n at 19.)  Thus, the relevant inquiry is whether "the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court".  Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 767 (9th Cir. 1991) (internal quotation marks and citation omitted).  Here, the balance of conveniences clearly weighs in favor of the Swiss forum.

---

[6] Plaintiff cites Carey v. Bayerische Hypo-Und Vereinsbank AG, 370 F.3d 234 (2d Cir. 2004), for the proposition that a plaintiff's choice of forum should be given more deference when that plaintiff is of modest means.  The Carey court, however, affirmed dismissal on forum non conveniens grounds and concluded that plaintiff's contract with a German company to secure financing for property in Germany gave rise to a reasonable expectation that any litigation would occur in Germany.  Id. at 238-39.

**1.    The Relevant Private Interest Factors All Favor Switzerland.**

Plaintiff contends that the most important witnesses and evidence in this action are located in this District and other parts of the United States because that is where the alleged off-label marketing occurred and where the government investigations are pending.  Plaintiff has fundamentally mischaracterized the nature of this case.  This is a derivative action purportedly brought on behalf of Novartis against its officers and directors.  As such, the success of Plaintiff's claims will turn on the knowledge and conduct of the Individual Defendants and whether they breached the duties that they owed to Novartis under Swiss law.[7]  When considered in the context of "materiality and importance" to this litigation, the underlying allegations of off-label marketing and ongoing investigations have relatively little bearing on the forum non conveniens analysis here.  Lueck, 236 F.3d at 1146.[8]

The most material and important witnesses in this action will be the officers and directors themselves.  While Plaintiff speculates about the existence of non-party witnesses who may testify regarding TOBI--a drug which, according to Plaintiff, "may have" been or was "potentially" promoted for off-label uses (Compl. ¶¶ 64, 74)--he fails to address the thirteen named defendants, eleven of whom reside in Europe and none of whom reside in California.  (Opp'n at 19-20.)  Moreover, while Plaintiff points to the alleged California residence of one of the "Unnamed Participants"--the only witness Plaintiff identifies for whom this forum would be more

---

[7] In other parts of his Opposition, Plaintiff recognizes that the central issue of this action is whether the Individual Defendants breached their fiduciary duties to Novartis.  (See, e.g., Opp'n at 6 ("Novartis' Board failed to take action to stop any off-label promotion."); Opp'n at 7 ("More significantly, the individual defendants knew about the off-label marketing or 'recklessly disregarded' this knowledge and did nothing to stop it."); Opp'n at 17 ("[T]he individual defendants had a duty to be informed of all material information reasonably available and act with the requisite care in discharging his or her duties.").)

[8] Other courts have dismissed actions on forum non conveniens grounds despite the existence of government investigations or related actions in the original forum.  See LaSala v. UBS, AG, 510 F. Supp. 2d 213, 217 (S.D.N.Y. 2007) (dismissing action on forum non conveniens grounds and finding that documentary evidence related to a government investigation pending in the original forum "does not appear to be pertinent to the actions of UBS employees, which are what is at issue in this case"); Chateau Des Charmes Wines Ltd. v. Sabate USA, Inc., No. C-01-4203, 2003 WL 22682483, at *5 (N.D. Cal. Nov. 10, 2003) (dismissing action on forum non conveniens grounds despite existence of lawsuits in the original forum related to same subject matter because the plaintiffs and central issues were not the same).

convenient--he ignores the fact that the other <u>three</u> "Unnamed Participants" are alleged to reside in Switzerland. (<u>Id.</u> at 20; Compl. ¶¶ 41-43.)[9]

Similarly, with respect to sources of proof, Plaintiff does not challenge that the documents pertaining to the knowledge and conduct of Novartis' Board all are maintained in Switzerland.[10] (Declaration of Monika Matti ¶ 4, dated March 3, 2009 (Docket No. 52).) Further, while Plaintiff suggests that depositions would most likely need to be taken in both Switzerland and the United States, the depositions of each of the Individual Defendants and three of the four "Unnamed Participants"--the most material witnesses to this case--presumptively will be taken outside of this forum, with the overwhelming majority taken outside of the United States. <u>See, e.g.</u>, <u>Fausto v. Credigy Servs. Corp.</u>, 251 F.R.D. 427, 429 (N.D. Cal. 2008) (noting a "general presumption that the deposition of a defendant should be conducted in the district of his residence") (internal quotation marks and citation omitted).

Finally, Plaintiff does not challenge Professor Nobel's conclusion that a judgment by this Court would not be recognized in the countries in which all but two of the Individual Defendants reside. (<u>See</u> Nobel Decl. ¶¶ 53-73.) Notwithstanding Plaintiff's speculation that some of the foreign directors may have scattered assets in the United States to which he could potentially attach a judgment, the likely problems that would be involved in enforcing a judgment rendered by this Court against the Individual Defendants who reside in Europe weigh in favor of dismissal.

      2.    <u>The Public Interest Factors Weigh Heavily in Favor of Dismissal.</u>

<u>First</u>, despite Plaintiff's attempt to demonstrate local interest based on the alleged

---

[9] Despite conceding that the majority of Defendants reside in Switzerland, Plaintiff makes the nonsensical claim that Switzerland would not be a convenient forum for those Individual Defendants residing in Germany, a country that shares a border with Switzerland. (Opp'n at 19.) Given that all but two of the Individual Defendants reside in Europe and <u>no party</u> resides in California, the residences of the parties favor the Swiss forum.

[10] The fact that some of the relevant documents located in Switzerland may be available electronically or produced by mail does not change the fact that this factor favors Switzerland. <u>See</u> <u>In re TS Tech USA Corp.</u>, 551 F.3d 1315, 1320-21 (Fed. Cir. 2008) (finding in the context of venue transfer that the district court erred in disregarding the weight to be afforded the location of electronic documents and noting that "the fact that access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous") (internal quotation marks and citation omitted).

---

DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS
CASE NO. C-08-02118 (SBA)

off-label marketing, neither the United States nor California has a meaningful interest in deciding what is truly at issue in <u>this</u> case: whether the officers and directors of a company incorporated and headquartered in Switzerland properly discharged their duties to that Swiss company under Swiss law. <u>See</u> <u>Capri Trading Corp. v. Bank Bumiputra Malaysia Berhad</u>, 812 F. Supp. 1041, 1045 (N.D. Cal. 1993) (finding that plaintiff's argument of local interest "strays from the gravamen of its complaint: injury to the shareholders of a Bahamian corporation"). To the extent the United States or this District has an interest in the alleged off-label marketing of TOBI or Trileptal, that interest is adequately safeguarded by the pending government investigations.[11]

Plaintiff also states that "it would be against public policy for an ADS shareholder not to have the right of a derivative action <u>against</u> a foreign company that purposefully avails itself of American capital and the protection of American laws". (Opp'n at 21-22 (emphasis added).) Plaintiff again mischaracterizes the nature of this action. Plaintiff has not brought claims against Novartis under the United States securities laws to enforce his own rights, but instead is seeking to step into Novartis' shoes to enforce the rights of Novartis against thirteen of its current and former officers and directors. In this regard, the cases cited by Plaintiff, <u>Pinker v. Roche Holdings, Ltd.</u>, 292 F.3d 361 (3d Cir. 2002), and <u>E.ON AG v. Acciona, S.A.</u>, 468 F. Supp. 2d 559, 587-88 (S.D.N.Y. 2007), which involved direct actions brought by ADS-holders against foreign companies under United States securities laws, are inapposite. Indeed, enforcement of the securities laws was the precise American interest identified by those courts. <u>See</u> <u>E.ON</u>, 468 F. Supp. 2d at 588 ("There is a strong interest in having an American court interpret and apply U.S. securities law claims."). Given that this action directly implicates the internal affairs of a Swiss corporation, Switzerland has the greatest interest in this case.

<u>Second</u>, the need to apply Swiss law to the substantive claims of this action strongly

---

[11] Contrary to Plaintiff's assertion (Opp'n at 21), the Court's determination that this case is properly venued in this District has no bearing on a forum non conveniens analysis. <u>See</u> <u>Chateau Des Charmes Wines</u>, 2003 WL 22682483, at *3 ("The United States Supreme Court has held that under the doctrine of forum non conveniens, a court has the discretion to dismiss a case even if jurisdiction and proper venue are established. The doctrine of forum non conveniens is based on the inconvenience of the chosen forum, not the impropriety of venue under the federal venue statutes.") (internal quotation marks and citation omitted).

favors dismissal. While Plaintiff attempts to downplay this consideration by suggesting that the fiduciary duty standard under Swiss law may be similar to that under New York law, this does nothing to mitigate the inevitable time, expense and inefficiency that would be involved in translating the case law and treatises this Court would use in applying Swiss law. See Leetsch v. Freedman, 260 F.3d 1100, 1105 (9th Cir. 2001).

## III. **The Complaint Does Not Adequately Plead Demand Futility.**

Even if New York law were to apply, Plaintiff has not demonstrated that pre-suit demand on the Novartis Board would have been futile.[12] Though the Complaint attempts to plead futility under only the self-interest and business judgment prongs of Marx v. Akers, 88 N.Y.2d 189 (N.Y. 1996), (see Compl. ¶¶ 80-92, 93-95), Plaintiff now alleges that he has established futility under all three prongs. (Opp'n at 15-18.) Irrespective of how Plaintiff characterizes his claims, the Complaint is devoid of any non-conclusory allegations sufficient to establish that demand is excused in this action.

### A. Plaintiff Has Not Sufficiently Pled a Failure To Exercise Business Judgment.

The business judgment prong of the Marx test provides that demand is excused "when [the] complaint alleges with particularity that the challenged transaction was so egregious on its face that it could not have been the product of sound business judgment of the directors". 88 N.Y.2d at 200-01. As set forth in Defendants' Motion, where, as here, the complaint fails to allege that the board affirmatively approved a transaction, the business judgment prong of Marx is inapplicable. (Defs' Mot. at 19.) In any event, even if this prong of Marx were to apply, the Complaint's "conclusory allegations of wrongdoing" do not excuse demand. Marx, 88 N.Y.2d at 202 (internal quotation marks and citation omitted).

Rather than identify particularized facts, Plaintiff's Opposition restates the standard for futility, i.e., that the board "affirmatively engaged in misconduct" that "was so egregious that it could not have been the product of sound business judgment". (Opp'n at 16.) However, "bald charges of mere failure to take corrective action are … inadequate to demonstrate futility". Lewis

---

[12] As set forth in Defendants' Motion, to the extent Swiss law applies to the substantive claims of this action, demand futility would not be at issue. (Defs' Mot. at 9 n.6.)

DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS
CASE NO. C-08-02118 (SBA)

v. Graves, 701 F.2d 245, 249 (2d Cir. 1983) (applying New York law). Conclusory allegations of Board approval of an alleged illegal practice, unsupported by particularized, factual allegations, do not "rise to the level required by the Marx test". Wandel v. Eisenberg, 871 N.Y.S.2d 102, 106 (App. Div. 1st Dep't 2009).

Matter of Comverse Tech., Inc., 56 A.D.3d 49 (App. Div. 1st Dep't 2008), the only case upon which Plaintiff relies, reaffirms the inadequacy of Plaintiff's allegations.[13] There, "the factual allegations drew a picture of a backdating process so open and egregious as to preclude the possibility that issuance and approval of those options could constitute an appropriate exercise of business judgment on the part of the board of directors". Wandel, 871 N.Y.S.2d at 106 (distinguishing Comverse and rejecting plaintiff's non-particularized allegations of demand futility). Here, by contrast, Plaintiff has provided no factual allegations from which the Court could infer Board awareness or knowledge, much less affirmative approval. See Marx, 88 N.Y.2d at 202 (futility not pled where "particular facts" of board misconduct were not alleged); M+J Savitt, Inc. v. Savitt, No. 08 Civ. 8535, 2009 WL 691278, at *7 (S.D.N.Y. Mar. 17, 2009) (applying New York law); Wilson v. Tully, 243 A.D.2d 229, 234 (App. Div. 1st Dep't 1998) (applying Delaware law).

B.    Plaintiff Has Not Sufficiently Pled that the Board Failed To Stay Informed.

Despite failing to allege futility on this basis in the Complaint, Plaintiff now asserts that demand is excused under the second prong of Marx because of the Board's alleged failure to stay informed. (Opp'n at 16-17.) Marx holds that demand is excused "when a complaint alleges with particularity that the board of directors did not fully inform themselves about the challenged transaction to the extent reasonably appropriate under the circumstances". 88 N.Y.2d at 200. The Complaint must "allege with sufficient specificity a purposeful and egregious … scheme where the directors had significant reason to question or investigate … and failed to do so". Wandel, 871 N.Y.S.2d at 106.

Plaintiff has not pled facts demonstrating that the Novartis Board had "specific

---

[13] In Comverse, the Court was able to apply Marx's business judgment prong because the conduct challenged there involved specific, affirmative steps taken by the board in granting stock options. 56 A.D.3d at 56. By contrast, Plaintiff here provides no factual allegations to establish that the Novartis Board took any affirmative action regarding the alleged off-label marketing.

information or reason to inform themselves about the details" of the alleged off-label marketing. Id. at 105.  Rather than provide any factual allegations, Plaintiff simply states that "the individual defendants had a duty to be informed of all material information reasonably available" and that "there were grounds for inquiry" into the alleged misconduct.  (Opp'n at 17.)  On this basis alone, Plaintiff concludes that "the board failed to exercise reasonably appropriate oversight of the off-label marketing".  (Opp'n at 17.)  These "[v]ague allegations" do not meet the particularity requirement of Rule 23.1.  M+J Savitt, 2009 WL 691278, at *7.[14]

Moreover, Plaintiff's observation that several of the Individual Defendants were members of the Audit and Compliance Committee (Opp'n at 17), in no way establishes that these directors "had significant reason to question or investigate" the alleged wrongdoing, Wandel, 871 N.Y.S.2d at 106, or that they failed to act "reasonably appropriate under the circumstances", Marx, 88 N.Y.2d at 200.  See also Ferre v. McGrath, No. 06 Civ. 1684, 2007 WL 1180650, at *6 (S.D.N.Y. Feb. 16, 2007) (demand not excused when "the pleading relies on the conclusory allegation that, because these directors were members of [the parent corporation's] Audit Committee, they 'knew or should have known' that [the subsidiary] was not conducting its affairs in conformity with state and federal regulations") (applying Delaware law).

C.    Plaintiff Has Not Sufficiently Pled that a Majority of the Board Is Interested.

The only argument set forth in Plaintiff's Opposition in support of demand futility under the self-interest prong of Marx is that the directors "received a direct financial benefit from the transactions or wrongful conduct, which is different from the benefit to shareholders generally".

---

[14] Miller v. Schreyer, 257 A.D.2d 358 (App. Div. 1st Dep't 1999) (applying Delaware law), the only other case cited by Plaintiff, is inapposite.  Miller is readily distinguishable on its facts in that the alleged $900 million securities scheme there involved many "obvious danger signs of employee wrongdoing" that were pleaded with particularity in the complaint.  Id. at 362 (internal quotation marks and citation omitted).  Moreover, the court in Miller was not considering the issue of demand futility in the first instance.  Rather, the court had decided this issue several years earlier, and was only considering whether intervening case law presented a "compelling reason" to depart from the law of the case doctrine.  See id. at 361 (noting that in order to "abandon" the court's prior ruling, "[t]he error sought to be corrected … must be so plain … [that it] would require [the] court to grant a reargument of a cause") (internal quotation marks omitted).  Significantly, in one of those intervening cases, Marx v. Akers, the New York Court of Appeals explicitly criticized Miller for excusing demand based on "conclusory allegations of wrongdoing" and "allowing the [demand futility] exception to swallow the rule".  88 N.Y.2d at 200.

DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS
CASE NO. C-08-02118 (SBA)

(Opp'n at 18.)  However, Plaintiff fails to explain with particularity <u>how</u> the directors received a unique financial benefit, and relies only on the fact that they were compensated "during the relevant time period based on Novartis's performance".[15]  (Opp'n at 18.)  As made clear by the authority cited in Defendants' Motion--which Plaintiff neither addresses nor disputes--"receipt of directors' fees is not sufficient to show self-interest by a board member".  <u>Alpert v. Nat'l Ass'n of Sec. Dealers, LLC</u>, No. 600657/04, 2004 WL 3270188, at *10 (N.Y. Sup. Ct. July 28, 2004) (internal quotation marks omitted) (applying New York law).[16]

## IV.    <u>Plaintiff Has Failed To Allege Continuous Ownership of Novartis ADSs.</u>

Other than reiterate the allegations in the Complaint, Plaintiff offers no support for his position that he has satisfied the continuous ownership requirement of Federal Rule of Civil Procedure 23.1.  The cases cited in Defendants' Motion plainly reject the type of conclusory allegations that Plaintiff makes here, <u>i.e.</u>, that he has owned Novartis ADSs "at all times relevant hereto".  <u>See, e.g.</u>, <u>In re Maxim Integrated Prods., Inc. Derivative Litig.</u>, No. C-06-0334, 2007 WL 2745805, at *3 (N.D. Cal. July 25, 2007) (finding allegation that plaintiffs owned stock "at all relevant times" to be insufficient under Rule 23.1's contemporaneous ownership pleading requirement).

Further, Plaintiff's suggestion that the continuous ownership pleading requirement is inapplicable because he "has alleged a course of conduct and a continuing scheme of wrongdoing by members of the board" (Opp'n at 23), is contrary to the law.  <u>See</u> <u>In re Maxim Integrated Prods.</u>, 2007 WL 2745805, at *4 (rejecting plaintiff's contention that continuous ownership pleading requirement is inapplicable where complaint alleges continuing scheme of wrongdoing).  More importantly, to the extent Plaintiff is suggesting that the wrongdoing alleged in the Complaint arose

---

[15] While Plaintiff references the compensation received by Defendant Jetzer in connection with his consultancy regarding governmental relations and Defendant Zinkernagel in connection with his delegacy to scientific advisory boards, Plaintiff does not even attempt to demonstrate how such compensation created a "direct financial benefit" from the alleged off-label marketing by Novartis' indirect United States subsidiaries.  (Opp'n at 18.)

[16] Contrary to Plaintiff's contention (Opp'n at 17-18), <u>Comverse</u> provides no support for Plaintiff's argument that the Novartis directors are interested because of their receipt of compensation.  In fact, the court there found that even though some of the directors had actually received backdated stock options, that alone did not render them interested.  56 A.D.3d at 54.

DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS
CASE NO. C-08-02118 (SBA)

prior to his purchase of Novartis ADSs,[17] he affirmatively lacks standing to bring this action. <u>See</u> <u>In re Autodesk, Inc. S'holder Derivative Litig.</u>, No. C-06-7185, 2008 WL 5234264, at *12 (N.D. Cal. Dec. 15, 2008) (rejecting plaintiff's "continuing wrong" theory and dismissing derivative plaintiff for lack of standing); <u>In re Affymetrix Derivative Litig.</u>, No. C-06-5353, 2008 WL 5050147, at *8 (N.D. Cal. Mar. 31, 2008) ("[A] derivative plaintiff has no standing to sue for misconduct that occurred prior to the time he became a shareholder of the corporation.").[18]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Dismiss.

Dated: April 14, 2009

CRAVATH, SWAINE & MOORE LLP

By: /s/ Sandra C. Goldstein
     SANDRA C. GOLDSTEIN

Attorneys for Defendants
RAYMOND BREU, SRIKANT DATAR,
WILLIAM GEORGE, DANIEL
VASELLA AND ROLF ZINKERNAGEL

KAYE SCHOLER LLP

By: /s/ Jeffrey S. Gordon
     JEFFREY S. GORDON

Attorneys for Defendants
RAYMOND BREU, SRIKANT DATAR,
WILLIAM GEORGE, DANIEL
VASELLA AND ROLF ZINKERNAGEL

MORRISON & FOERSTER

By: /s/ Jordan Eth
     JORDAN ETH

Attorneys for Nominal Defendant
NOVARTIS AG

---

[17] In an effort to determine the specific date on which Plaintiff purchased Novartis ADSs, counsel for Defendant Novartis AG left a voicemail on this issue with Plaintiff's counsel on April 3, 2009. Plaintiff's counsel has not yet returned Novartis AG's counsel's telephone call.

[18] Even the case that Plaintiff cites in support of this proposition <u>declines</u> to apply the "continuing wrong" exception to the continuous ownership requirement of Rule 23.1. <u>In re Bank of New York Derivative Litig.</u>, 173 F. Supp. 2d 193, 198-99 (S.D.N.Y. 2001) (finding that the "relevant acts of wrongdoing" occurred before plaintiffs purchased their stock).

**ECF ATTESTATION**

I, Sandra C. Goldstein, am the ECF User whose ID and password are being used to file Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss Plaintiff's Shareholder Derivative Complaint.  In compliance with General Order 45, X.B., I hereby attest that Jeffrey S. Gordon and Jordan Eth have concurred in this filing.

Dated:  April 14, 2009                           CRAVATH, SWAINE & MOORE LLP

                                                         By:  /s/ Sandra C. Goldstein
                                                                 SANDRA C. GOLDSTEIN

                                                                 Attorneys for Defendants
                                                                 RAYMOND BREU, SRIKANT DATAR,
                                                                 WILLIAM GEORGE, DANIEL
                                                                 VASELLA AND ROLF
                                                                 ZINKERNAGEL

DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS
CASE NO. C-08-02118 (SBA)