UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| GREG SARANDI, Trustee of Next Phase Marketing Inc. Defined Benefit Plan and Trust, derivatively and on behalf of Novartis AG, (Novartis Inc.),<br><br>    Plaintiff,<br><br> vs.<br><br>RAYMOND BREU, et al.,<br><br>    Defendants. | Case No:  C 08-2118 SBA<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS DERIVATIVE COMPLAINT**<br><br>[Docket 49] |

   Plaintiff Greg Sarandi brings the instant diversity jurisdiction shareholder derivative action against thirteen officers and directors of Novartis AG (Novartis), a Swiss corporation. He alleges that Defendants breached their fiduciary duty to the company by allowing it to engage in the "off-label" marketing of its two prescription medications.  An off-label use is the practice of prescribing pharmaceuticals for a purpose outside the scope of a drug's approved label.

   The parties presently are before the Court on Defendants' Motion to Dismiss Derivative Complaint.  (Docket 49.)  Having read and considered the papers filed in connection with this matter, and being fully informed, the Court hereby GRANTS the motion for the reasons set forth below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b).

I.   **BACKGROUND**

   Plaintiff, a resident of Arizona, is the Trustee of Next Phase Marketing, Inc., a defined benefit plan and trust which owns Novartis American Depository Shares (ADSs).  (Compl. ¶ 15.)  ADSs provide a means for a foreign corporation to sell equity in American markets.

(Pl's Opp'n at 10.) ADSs are not themselves stock shares in a company. Rather, they correspond to ownership rights in foreign stock that has been deposited with a depository institution. The depository institution then issues an American Depository Receipt (ADR), which is a certificate evidencing ownership of the ADSs. (Compl. ¶ 18.) The issuance of ADSs is governed by a Deposit Agreement, which is entered into by the foreign corporation, the depository and the ADS holder. (Id.) The ADS holder is not considered the shareholder; rather, the depository is considered the shareholder. (Matti Decl. ¶¶ 9-10.) At the time of the events alleged in the Complaint, Novartis had ADSs registered with the United States Securities and Exchange Commission. (Compl. ¶ 20.) Morgan Guaranty Trust Company of New York served as the depository for the ADSs.

On April 23, 2008, Plaintiff filed the present shareholder derivative action in this Court based on his status as ADS holder. Formed in 1996, Novartis is a Swiss stock corporation with its principal executive offices located in Basel, Switzerland. (Id. ¶ 20.) The Complaint alleges three claims against various Novartis officers and directors for: (1) breach of fiduciary duty; (2) abuse of control; and (3) unjust enrichment. The named Defendants are Raymond Breu (Breu), Birgit Breuel (Breuel), Peter Burkhardt (Burkhardt), Srikant Datar (Datar), William W. George (George), Alexandre F. Jetzer (Jetzer), Pierre Landolt (Landolt), Ulrich Lehner (Lehner), Hans-Joerg Rudloff (Rudloff), Helmut Sihler (Sihler), Daniel Vasella (Vasella), Wendelin Wiedeking (Wiedeking) and Rolf M. Zinkernagel (Zinkernagel). (Id. ¶¶ 24-36.)[1] Breu, Burchhardt, Jetzer, Landolt, Rudloff, Vasella and Zinkernagel reside in Switzerland. (Matti Decl. ¶ 11.) Brueul, Lehner and Wiedeking reside in Germany, and Sihler resides in Austria. (Id.) The remaining two defendants, Datar and George reside in the state of Massachusetts. (Id.)

The claims in this action arise from Defendants' alleged failure to protect Novartis' interests with respect to the company's off-label marketing of two medications: TOBI and

---

[1] Novartis is named as a nominal defendant. (Id. ¶ 20.) "When a shareholders' derivative suit is in federal court under diversity jurisdiction, the corporation must be joined as a nominal defendant if the pleadings make clear that the corporation opposes the suit, as it does here." PVI, Inc. v. Ratiopharm GmbH, 253 F.3d 320, 328 (8th Cir. 2001).

1  Trileptal.  An off-label use is a use other than that which is stated on the drug's approved label,
2  which sets forth the conditions for which the drug has been shown to be safe and effective.
3  (Compl. ¶ 2.)  Off-label uses include changing the approved dose or combining the medication
4  with other treatments.  (Id.)  Physicians are allowed to prescribe medications for off-label uses.
5  (Id.)  However, pharmaceutical companies are prohibited from marketing or promoting off-
6  label uses, absent formal approval by the Food and Drug Administration (FDA).  (Id.)

7  TOBI (tobramycin solution for inhalation) is a drug-device that consists of a nebulizer
8  that stores and delivers a specific concentration of a medication known as tobramycin through
9  inhalation.  (Id. ¶ 59).  In December 1997, the FDA granted approval to PathoGenesis
10 Corporation to market TOBI for the treatment of cystic fibrosis.  (Id.)  Chiron Corporation
11 (Chiron), which is located in the San Francisco Bay Area, began marketing TOBI after it
12 acquired PathoGenesis in 2000.  (Id. ¶ 60.)  In April 2006, Novartis acquired the outstanding
13 shares of Chiron, which then was merged into Novartis.  (Id. ¶ 21.)  Both before and after the
14 Chiron-Novartis merger, Chiron is alleged to have improperly marketed TOBI for off-label
15 uses.  (Id. ¶¶ 64-71.)   Plaintiff alleges that "[f]or most or all of the time that Chiron appears to
16 have promoted off-label uses of TOBI, Novartis' Board failed to take any action to stop any
17 off-label promotion."  (Id. ¶ 75.)

18 Trileptal is a medication approved by the FDA in 2000 for the treatment of partial
19 seizures.  (Id. ¶ 76.)  In May 2005, the U.S. Attorney's Office in the Eastern District of
20 Pennsylvania served a subpoena on Novartis Pharmaceuticals Corporation (NPC), a subsidiary
21 of Novartis, "regarding the potential off-label promotion of [T]rileptal."  (Id. ¶¶ 1, 3, 78.)
22 Though not alleged in the Complaint, it also appears that the U.S. Attorney's Office in the
23 Northern District of California is conducting an investigation regarding the marketing and
24 promotion of TOBI.  (Pl.'s Opp'n at 20.)  As above, Plaintiff alleges that "[f]or most or all of
25 the time that NPC promoted off-label uses of [T]rileptal, Novartis' Board was aware of NPC's
26 actions but failed to take action to stop the off-label promotion."  (Id. ¶ 79.)

27 Certain of the Defendants (Breu, Datar, George, Vasella and Zinkernagel) have filed a
28 Motion to Dismiss Plaintiff's Shareholder Complaint.  (Docket 49.)  Defendants first contend

1   that under Swiss law, Plaintiff lacks standing to bring a derivative action on behalf of Novartis
2   against its directors and officers.  Alternatively, they contend that the Court should exercise its
3   discretion and dismiss the action under the doctrine of forum non conveniens on the ground
4   that Plaintiff's claims center on the conduct of Defendants, the vast majority of whom reside in
5   or near Switzerland.

6   As to the issue of standing, Plaintiff's position is that the laws of New York, not
7   Switzerland, are controlling under the choice-of-law provision contained in the Deposit
8   Agreement.  Unlike Swiss law, New York law permits an ADS holder to pursue a derivative
9   suit.  With regard to the issue of forum non conveniens, Plaintiff contends that this District is
10  more convenient because the alleged off-label promotion of TOBI and Trileptal occurred here,
11  as well as in other parts of the United States.[2]  The Court discusses these issues in turn.

12  **II.    LEGAL STANDARD**

13  Defendants' motion challenges Plaintiff's standing.  As such, it is, in effect, a challenge
14  to the court's jurisdiction which is properly raised under Rule 12(b)(1) of the Federal Rules of
15  Civil Procedure.  See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Because standing
16  and mootness both pertain to a federal court's subject-matter jurisdiction under Article III, they
17  are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)"); see
18  Warth v. Seldin, 422 U.S. 490, 498 (1975) (standing is a "threshold question in every federal
19  case, determining the power of the court to entertain the suit.").

20  Rule 12(b)(1) authorizes a motion to dismiss for lack of subject matter jurisdiction.  A
21  jurisdictional attack may be facial or factual.  White, 227 F.3d at 1242.  "In a facial attack, the
22  challenger asserts that the allegations contained in the complaint are insufficient on their face
23  to invoke federal jurisdiction."  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir.

---

[2] Defendants also argue that dismissal is warranted under Federal Rule of Civil Procedure 23.1, which requires that a plaintiff first make a pre-lawsuit demand on the corporation's Board of Directors or plead with particularity facts that such a demand would have been futile.  They also assert that Plaintiff has not alleged continuous ownership in Novartis, as required by Rule 23.1.  Given the Court's determination that dismissal is warranted on the basis of lack of standing, or alternatively, under the doctrine of forum non conveniens, the Court does not reach these issues.

2004). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise involve federal jurisdiction." Id. "In such circumstances, a court may examine extrinsic evidence without converting the motion to one for summary judgment, and there is no presumption of the truthfulness of the Plaintiff's allegations." Id. In either event, "[w]hen subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." Tosco Corp. v. Comtys. for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001); Wilbur v. Locke, 423 F.3d 1101, 1107 (9th Cir. 2005) ("A plaintiff has the burden of establishing the elements required for standing.").

## III.   DISCUSSION

### A.   STANDING

A derivative action may be brought by a *shareholder* on behalf of the corporation to remedy an alleged injury to the corporation where the corporate cause of action is, for some reason, not asserted by the corporation itself.  See Kamen v. Kemper Financial Servs., Inc., 500 U.S. 90, 95-96 (1991).  In this case, Plaintiff does not own any shares in Novartis, but rather, is a holder of Novartis ADSs.  As such, the threshold issue presented is whether, *as an ADS holder*, Plaintiff has standing to bring a derivative action against the company's officers and directors.  That determination, in turn, depends on whether Swiss or New York law is controlling.

#### 1.   Choice of Law

Federal courts sitting in diversity look to the law of the forum state, e.g., California, in making a choice of law determination.  See Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 937 (9th Cir. 2001); Hoffman v. Citibank (South Dakota) N.A., 546 F.3d 1078, 1082 (9th Cir. 2008).  Defendants contend that California follows the "corporate internal affairs doctrine," which holds that the law of the state of incorporation "'provides the relevant corporate governance general standard of care.'"  See State Farm Mut. Auto. Ins. Co. v. Super. Ct., 114 Cal. App. 4th 434, 442 (2003) (quoting Atherton v. FDIC, 519 U.S. 213, 224 (1997)); Cal.Corp.Code § 2116.  Since Novartis is a Swiss corporation, Defendants argue that Swiss law

1  applies and that Swiss law does not allow an ADS holder to bring a derivative action.  (Defs.'
2  Mot. at 9; Nobel Decl. ¶¶ 29-30.)  In response, Plaintiff contends that under the choice-of-law
3  clause contained in the Deposit Agreement, New York law controls and that New York law
4  authorizes ADS holders to bring a derivative action.  (Pl.'s Opp'n at 9-14.)
5        The choice-of-law clause in the Deposit Agreement states:  "The Deposit Agreement
6  shall be governed by and construed in accordance with the laws of the State of New York."
7  (Van Voris Decl. Ex. A § 18 [Docket 51].)  To determine the scope of this provision, the Court
8  looks to the law of the forum specified in the agreement, which is New York.  See Washington
9  Mut. Bank, FA v. Super. Ct., 24 Cal. 4th 906, 916 n.3 (2007) ("the scope of a choice-of-law
10 clause in a contract is a matter that ordinarily should be determined under the law designated
11 therein") (citing Nedlloyd Lines B.V. v. Super. Ct., 3 Cal. 4th 459, 469 n.11 (1992)); see also
12 Batchelder v. Kawamoto, 147 F.3d 915, 918 n.2 (9th Cir. 1998).  Under New York law,
13 choice-of-law clauses are deemed to apply only to claims that are based on rights conferred by
14 the agreement.  See Finance One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc., 414 F.3d
15 325, 335 (2d Cir. 2005) (choice-of-law clause inapplicable to set-off claim that was not based
16 rights contained in the agreement).  Extra-contractual claims "are outside the scope of
17 contractual choice-of-law provisions that specify what law governs construction of the terms of
18 the contract ...."  Id..  Thus, unless expressly specified otherwise, a choice-of-law clause should
19 not be interpreted to encompass extra-contractual claims, even if such claims arise from or are
20 related to the contract.  Id.; Klock v. Lehman Bros. Kuhn Loeb, Inc., 584 F. Supp. 210, 215
21 (S.D.N.Y. 1984) (stating that under New York law "[a] contractual choice of law provision
22 governs only a cause of action sounding in contract").
23       The gravamen of the Plaintiff's derivative action is that Defendants breached their
24 fiduciary duty to Novartis by failing to prevent the off-label marketing of TOBI and Trileptal.
25 However, it is undisputed that Plaintiffs' claims are not predicated on rights specified in the
26 agreement.  Nor is it disputed that the Deposit Agreement does not confer upon an ADS holder
27 the right to bring a derivative action.  Where an ADS holder seeks to assert rights not
28 specifically enumerated under the deposit agreement, such claims are considered extra-

1 contractual.  See Batchelder, 147 F.3d at 917.  As such, under New York law, the choice-of-
2 law clause in the Deposit Agreement does not govern Plaintiff's derivative claims.  See id.;
3 accord Tomran, Inc. v. Passano, 891 A.2d 336, 341-42 (Md. 2006) (holding that under New
4 York law, choice-of-law provision in an ADS deposit agreement did not apply to derivative
5 claims brought by ADS holder where the agreement did not provide for such right of action).
6       Plaintiff contends that Tomran is distinguishable because the choice-of-law clause was
7 different than the one at issue in this case.  The clause in Tomran provided that the "Deposit
8 Agreement and Receipts shall be interpreted and *all rights hereunder and thereunder …* shall
9 be governed by the laws of the State of New York."  891 A.2d at 342 (emphasis added).
10 According to Plaintiff, the inclusion of "hereunder and thereunder" was intended to limit "all
11 rights" as specifically set forth in the agreement, and that the absence of such language in the
12 Deposit Agreement means that the choice-of-law clause should be interpreted more
13 expansively.  (Pl.'s Opp'n at 14.)  The Court disagrees.
14       The plaintiff in Tomran attempted to argue that the reference to "all rights" referred to
15 extra-contractual rights.  891 A.2d at 343.  The court disagreed and held that "hereunder and
16 thereunder" meant "all rights" under the deposit agreement at issue.  Id. at 344-45.  Here, the
17 Deposit Agreement lacks any mention of "all rights," and merely states "[t]he Deposit
18 Agreement shall be governed by and construed in accordance with the laws of the State of New
19 York."  (Van Voris Decl. Ex. A § 18.)  If anything, the choice-of-law clause in the Deposit
20 Agreement is *narrower* than the one in Tomran.  See Winter-Wolff Int'l, Inc. v. Alcan
21 Packaging Food and Tobacco Inc., 499 F. Supp. 2d 233, 240 (E.D.N.Y. 2007) ("The
22 contractual language 'arising hereunder' is not sufficiently broad to encompass tort claims.").
23 Indeed, courts applying New York law and considering choice-of-law provisions worded
24 almost identically to the provision in the Deposit Agreement have held that such a clause is
25 limited to contractual causes of action.  See Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1996)
26 (holding that choice-of-law provision in mortgage document stating that such document "shall
27 be governed by and construed in accordance with the laws of the Commonwealth of
28 Massachusetts" did not apply to claim for fraudulent misrepresentation); BBS Norwalk One,

Inc. v. Raccolta, Inc., 60 F. Supp. 2d 123, 129 (S.D.N.Y. 1999) (clause stating that "[t]his Agreement shall be governed and construed in accordance with the laws of the State of New York" was "narrow" in scope and thus did not apply to claim for breach of fiduciary duty).

In sum, the Court concludes that the choice-of-law clause contained in the Deposit Agreement does not apply to any of Plaintiff's derivative shareholder claims.  Given that conclusion, the Court applies the internal affairs doctrine, which counsels the Court to look to Swiss law to determine whether an ADS holder may bring a derivative shareholder action.  See Batchelder, 147 F.3d at 920 (internal affairs doctrine required the application of Japanese law to an ADR holder's derivative claims brought against the officers and directors of a Japanese corporation).

### 2. Standing to Bring Derivative Claims under Swiss Law

Having concluded that Swiss law applies, the Court now determines whether an ADS holder has standing under Swiss law to assert derivative claims.  In support of their motion to dismiss, Defendants proffer the detailed, expert declaration of Professor Peter Nobel, who, since 1984, has been a professor of law at the University of St. Gallen in Switzerland.  (Nobel Decl. ¶ 4.)  According to Professor Nobel, the Swiss Code of Obligations is the relevant body of substantive law governing businesses.  (Id. ¶ 18.)  Swiss law provides that only shareholders of the corporation have the right to initiate an action against a Swiss corporation's Board of Directors for damage to the corporation caused by their intentional or negligent actions.  (Id. ¶¶ 19-21.)  Novartis ADS holders, such as Plaintiff, are not considered registered shareholders under Swiss law, and therefore, cannot bring a derivative action.  (Id. ¶¶ 29-30; Matti Decl. ¶¶ 9-10.)[3]  Plaintiff does not address, let alone, dispute the opinions of Professor Nobel.  Moreover, the Court finds that Professor Nobel is qualified to render an opinion regarding Swiss law, and finds his undisputed conclusion that Plaintiff lacks standing to bring a derivative action on behalf of Novartis under Swiss law compelling and, thus, dispositive.  (Id.

---

[3] The depository for ADR holders, JPMorgan Chase Bank, is the registered shareholder for ADR holders in the Novartis shareholder register. (Matti Decl. ¶ 10.)  The shareholder register of Novartis does not list Plaintiff as a Novartis shareholder.  (Id. ¶ 8.)

¶¶ 29-30.)  Since Plaintiff lacks standing to bring a derivative action, the Complaint is subject to dismissal.

### B.     FORUM NON CONVENIENS

The Court's determination that Plaintiff cannot bring the instant action is based on its conclusion that Swiss, as opposed to New York, law is controlling.  Nevertheless, even if the Court were to find that New York law applies to Plaintiff's claims, this action would be subject to dismissal under the doctrine of forum non conveniens.  "The essence of the forum non conveniens doctrine is that a court may decline jurisdiction and may actually dismiss a case, even when the case is properly before the court, if the case more conveniently could be tried in another forum."  Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947).  "That doctrine involves the dismissal of a case because the forum chosen by the plaintiff is so completely inappropriate and inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else."  Norwood v. Kirkpatrick, 349 U.S. 29, 31 (1955).

"A party moving to dismiss on grounds of forum non conveniens must show two things: (1) the existence of an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal."  Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 767 (9th Cir. 1991).  The district court is vested with the discretion to decide whether to dismiss an action under this doctrine.   See Mizokami Bros. of Ariz., Inc. v. Baychem Corp., 556 F.2d 975, 977 (9th Cir. 1977).  Here, Plaintiff does not dispute that Switzerland is an adequate alternative forum.  (Pl.'s Opp'n at 19-21.)  Thus, the relevant inquiry is whether "the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court."  Lueck v. Sundstrand Corp., 236 F.3d 1137, 1145 (9th Cir. 2001).

#### 1.     **Private Factors**

"Courts consider the following private interest factors:  (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other

practical problems that make trial of a case easy, expeditious and inexpensive." Id. (citations omitted).  The Court may consider any or all of these factors, depending on their relevance.  Id.

Here, the Court concurs with Defendants that Switzerland is a more convenient forum for the parties and witnesses.  Most of the Defendants (i.e., Breu, Burckhardt, Jetzer, Landolt, Rudloff, Vasella and Zinkernagel) reside there.  (Motti Decl. ¶ 11.)  Nevertheless, Plaintiff maintains that California is comparatively more convenient because not *all* of the parties reside in Switzerland.  He highlights the fact that he resides in Arizona, two of the Defendants reside in Massachusetts and that the remaining four Defendants live in Europe but outside of Switzerland.  (Pl.'s Opp'n at 19.)  Even so, the four European-based directors reside in Germany and Austria, both of which are next to Switzerland.  (Motti Decl. ¶ 11.)  Thus, for eleven of the thirteen Defendants, Switzerland is far more convenient as compared to California—a forum in which *none* of the parties reside.

With regard to witnesses, Switzerland is also a better suited forum to hear this case.  The Court again concurs with Defendants that the most important witnesses are the Defendants, since it is their conduct which is at issue in this case.  (Defs.' Mot. at 14.)  To resolve Plaintiff's claim for breach of fiduciary duty, the conduct of the Defendants must be evaluated under the standards imposed by Swiss law.   (Nobel Decl. ¶¶ 18-20.)  Plaintiff disputes this, and argues that the focus of this action will be on the off-label marketing that allegedly occurred in California and throughout the United States.  (Pl.'s Opp'n at 19.)  He also claims that Chiron (now part of Novartis) is located in Emeryville, California, and that there is an ongoing investigation in this District being conducted by the local U.S. Attorney's Office.  (Id. at 20.)  The Court is not persuaded by Plaintiffs' argument.  Neither Chiron nor Novartis is being sued directly for off-label marketing.  Rather, Novartis' directors are being accused of breaching their fiduciary duties to the Company for having "*failed to take action to stop* any off-label promotion" of TOBI and Trileptal.  (Compl. ¶¶ 75(emphasis added), 79, 97.)  While evidence concerning Novartis' alleged conduct relating to off-label marketing may be germane to this case, the resolution of Plaintiff's claims ultimately will turn on the knowledge and conduct of the Defendants.

Likewise, Switzerland will be more convenient insofar as access to evidence is concerned. There is no dispute that the documents pertaining to the knowledge of Novartis' officers and directors are maintained in Switzerland. (Matti Decl. ¶ 4.) Still, Plaintiff suggests that the location of the documents is insignificant in light of modern communication technology. (Pl.'s Opp'n at 20.) While technological advances may make documents more portable, their physical location remains a pertinent consideration. See In re Volkswagen of America, Inc., 545 F.3d 304, 316 (5th Cir. 2008) (rejecting district court's conclusion that "the relative ease of access to sources of proof is neutral because of advances in copying technology and information storage").

Finally, the record supports the conclusion that a judgment rendered in this Court may not be enforceable in Switzerland, Austria and Germany, where all but two of the Individual Defendants reside. (Nobel Decl. ¶ 53-73.) This fact weighs in favor of Switzerland as the preferable forum. See Scottish Air Intern., Inc. v. British Caledonian Group, PLC, 81 F.3d 1224, 1233 (2d Cir. 1996) (affirming dismissal on forum non conveniens ground based, in part, on concern regarding whether injunctive relief would be effective in Great Britain). Plaintiff does not dispute Professor Nobel's opinion in this regard, but suggests that some of the Defendants may have property in California or the United States that could be levied if a judgment were entered. (Pl.'s Opp'n at 21.) However, Plaintiff's argument is unsupported by any legal or factual authority. At bottom, the Court concludes that the private factors favor Switzerland as the more convenient forum.

### 2. **Public Factors**

The public interest factors pertinent to a forum non conveniens analysis consist of: (1) local interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum. Lueck, 236 F.3d at 1147.

The first two public factors favor Switzerland as the appropriate forum for this case. The instant dispute is governed by Swiss law, involves a Swiss entity and addresses the conduct of primarily Swiss residents. As such, Switzerland has a much greater interest in this

1  case as compared to California.  See Gilbert, 330 U.S. at 509 (noting that there is "a local
2  interest in having localized controversies decided at home.").  Moreover, it will be more
3  efficient for a Swiss court to interpret and apply its own law, versus this Court having to do so.[4]

4  Plaintiff contends that this Court expressed "a strong local interest" by virtue of its
5  Order of December 15, 2008, declining to sua sponte transfer the action to the Eastern District
6  of Pennsylvania or the District of New Jersey.  (Pl.'s Opp'n at 21.)  That ruling concerned the
7  issue of whether venue was proper in this District, and has no bearing on the instant motion.
8  The focus with respect to a forum non conveniens motion is *notwithstanding* the presence of
9  venue and jurisdiction, whether the Court, in its discretion, should decline to exercise
10 jurisdiction over the dispute.  See Sinochem Intern. Co. Ltd. v. Malaysia Int'l Shipping Corp.,
11 549 U.S. 422, 424 (2007).

12 Next, Plaintiff argues that dismissing this action in favor of a Swiss forum would
13 contravene public policy on the ground that it would effectively allow a foreign corporation to
14 avail itself to the benefits of "American capital and the protection of American laws" without
15 bearing the burden of having to litigate in an American court.  (Pl.'s Opp'n at 21-22.)  That
16 argument might have merit *if* this case were brought as a *direct* action against the corporation
17 based on violations of American law.  This is not that case, however.  Rather, this is a
18 derivative action in which the claim is not being brought *against* the corporation, but rather, *by*
19 the corporation against its officers and directors for injury to the company.  This distinction is
20 highlighted by the cases cited by Plaintiff, Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 366
21 (3rd Cir. 2002) and E.ON AG v. Acciona, S.A., 468 F. Supp. 2d 559, 587-88 (S.D.N.Y. 2007),
22 both of which involved direct, as opposed to derivative, actions seeking to enforce American
23 securities laws.  Despite Plaintiff's suggestions to the contrary, this is not a case where a

---

[4] The Court also notes that the applicable Swiss laws are not in English and would have to be translated if the case were to be litigated in this forum.  The translation process will add to the cost and potentially delay resolution, and possibly result in additional disputes over the translations themselves.  See Miller v. Boston Scientific Corp., 380 F. Supp. 2d 443, 453 (D.N.J. 2005) ("the burden and expense of translating such evidence into English … is another factor favoring dismissal.").

foreign corporation is accepting the benefits, but not the burdens, of operating in the United States.

The Court concludes that the private and public factors, on balance, demonstrate that Switzerland is a more convenient and appropriate forum for this action. Thus, even if Plaintiff had standing to bring this action, dismissal is otherwise warranted under the doctrine of forum non conveniens.

## IV.   CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Defendants' Motion to Dismiss Derivative Complaint is GRANTED. The Clerk shall close the file.

IT IS SO ORDERED.

Dated: September 2, 2009

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge